Our next case up is 410-0704 Clinton Landfill, Inc. v. Mahomet Valley Water Authority. The appellant is Jamaica Nair. I apologize. Nair? Nair. Okay. And for the appellee is Katherine Baske-Weiler. Well, thank you, counsel. Ms. Nair, you may proceed. Thank you. May it please the court? Counsel. Counsel. My name is Jonike Nair. I'm from the law firm of Elias McGinnis, Riffle, and Szigeti in Peoria. I'm counsel for Clinton Landfill, Inc., which is the appellant plaintiff in this case. We're here on an interlocutory appeal from a denial of a motion for grant of a preliminary injunction. Your Honor, I'd like to just run a bit through some of the history of the case and run through the material covered in our briefs, and I'd like to answer any questions that the court might have. So by way of background, the property at issue in this case is a piece of property owned by my client, Clinton Landfill, which is located in DeWitt County, Illinois, near the city of Clinton. It's being developed for use as a chemical landfill. In the course of the development of the property, CLI, Clinton Landfill, has received approval from the DeWitt County Board and the IEPA, the Illinois Environmental Protection Agency, for the project. Currently, there is an application pending before the U.S. Environmental Protection Agency, filed by Clinton Landfill, seeking to have a permit granted for the operation of the chemical landfill at the site. What type of a permit is that? In order to landfill PCB waste above a certain concentration, the U.S. EPA needs to approve  a permit. The Mahomet Valley Water Authority expressed some interest in this project and started asking questions, which Clinton Landfill, I believe, thoroughly addressed. There were substantial communications between the parties prior to any lawsuit in this case. In November of last year, the Mahomet Valley Water Authority resolved in a special meeting of its Board of Trustees to contest CLI's permit application. Leading up to that point, CLI and its attorneys had many times encouraged the Mahomet Valley Water Authority to itself file a declaratory judgment action to determine whether it had the authority to proceed with its activities in the U.S. EPA proceeding. The Mahomet Valley Water Authority decided not to do so and instead simply resolved to go ahead and contest. As a result, we filed this suit seeking declaratory judgment determining the rights and authority of the Mahomet Valley Water Authority in regard to the U.S. EPA permit application filed by Clinton Landfill. So that's where we are roughly today. The case is pending in Piatt County Court, which is in Piatt County is in fact where the Mahomet Valley Water Authority is located. That's where its central office is. The case is pending. We had previously moved for summary judgment. That motion was denied and we filed a motion for a preliminary injunction. That motion was denied in August and that is what brings us before you today. Counsel, this is a case I've never seen or even heard of before. I find it very unusual. You are seeking to bar a governmental, well not a governmental entity, you're seeking to bar a corporation from expressing, well I guess it is a governmental entity. It is. Okay. You're seeking to bar a governmental entity from expressing an opinion concerning a proposal in the community in which it operates that the entity believes would be detrimental. Yes, Your Honor. Because we believe that the governmental entity simply does not have the power under its enacting statute to pursue the activities that it's seeking to pursue. So the expressing opinions falls within the area that the legislature has to provide specific authority for? Well, Your Honor, to take it to what might seem an unreasonable conclusion, but nevertheless, let's say there's a divorce case that the Mahomet Valley Water Authority has an opinion about. It clearly does not have the statutory authority to express whether, what it thinks about the divorce case. Well, Your Honor, you're saying you could get an injunction against that? Yeah, would that be enjoinable too? Absolutely. Absolutely. If I'm in the midst of a divorce case and the Mahomet Valley Water Authority decides to put in its two cents and meddle with, interfere with, and contest my child custody dispute, absolutely I could get... But your clearly ascertainable right. My clearly ascertainable right, Clinton Landfills, is to petition to the U.S. EPA without unlawful interference by a government entity. Where's that written? Where's that come from? I think that that's implicit in the law. Certainly, if the law delineates what an entity is permitted to do, it exceeds its authority in such a way that it interferes with a party's ability to pursue its regulatory and its statutory... You've twice used the term interfere and interference. Yes. How does that, how does this constitute interference? There are several... In a worst case scenario, how is, how, when you say interference, I just don't understand how that works. Ah, okay. Well, the acts we're seeking to enjoin range from public comment, written public comment, through appeal. So, not only... Through appeal of what? Appeal of a grant of a permit from the U.S. EPA. That clearly would be interference. Well, we're not, we're not, whether they can take an appeal, that's, I take it that would be some sort of administrative function or some legal action of some kind. But what about rendering, at the moment, what you're seeking to enjoin is rendering an opinion. What we're seeking to enjoin is submitting written public comment, oral public comment, intervening as a party, and appealing. Well, they haven't, have they sought to intervene as a party? Not yet, but they didn't submit public comment until they submitted public comment, Your Honor. And that maybe is, is, is a, something I would like to address because it's been an ongoing theme throughout the briefing, which is the question of when, when is it appropriate to challenge the intention or the future activities of this governmental entity. The position that's been taken by the Muhammad Valley Water Authority is that, that our challenges or our, our request for preliminary injunction as to, for example, Your Honor, appeal, intervention as a party and so on, that those, that, that we're not ripe yet to challenge or to seek an, an injunction as to those actions. That's been their position. However, their position is also that once those activities are done, our case is moved as to that aspect, because all we're seeking is injunctive relief and declaratory judgment. So it becomes moot once the action's been taken. So for example, the report that they sent to the U.S. EPA, the report that the Muhammad Valley Water Authority sent to the U.S. EPA, up until the day they sent that report, it's their position that any injunction or any action we took to try to prevent them from filing such a report was not right. But then the moment that they filed it, the, our action became moot. That's not the law. Under the Declaratory Judgment Act, we feel quite comfortable that when they resolved in November of 2009 to contest the permit application, they expressed their intention as a body, as a governmental entity, to take this action, and then they in fact said about doing just that, that gave us a sufficient basis to seek, to seek the assistance of the courts in determining their legal capacity to take these actions. Well, let me see if I understand your theory. Your theory is that this is a governmental entity which needs specific statutory authority to do, I guess, anything? Anything beyond the scope of its authority, yes. Well, what is its scope of its authority, and how do we determine that? If we apply Dillon's Rule, this is clearly not a home rule entity. Right, it's not a home rule entity, so then? Under Dillon's Rule, we go to the statute in the Constitution. We look and see, is there any express granted authority? Well, clearly there's no, it would have been amazing if the legislature had thought, well, we can give them the power to intervene in U.S. EPA proceedings, so of course it's not going to be that express. So the next question is, is there something in the Act that would support a finding that the legislature intended that an entity like this have the power to take the actions it's seeking to take? And that's really where we get into a discussion of what the purpose, what the job is of a water authority in the state of Illinois. And that's been briefed again extensively by both parties, but the only part of the Act that either party has really highlighted that could possibly give a right to have some sort of general police power or general power to act for the public good, for the public benefit, is Section 24 of the Act. And we discussed that at some length. We believe that Section 24 on its face is invalid because it's a partial sentence. It doesn't relate to anything. It's a partial sentence. It simply, it doesn't. Partial sentence? Yes, Your Honor. I'm sorry, I have a cold. You can't understand me, just tell me to rephrase. So it's a partial sentence. It's incomplete. It doesn't, it hangs there in the middle of the statute. And it's pretty clear why it does that, if you read the statute as a whole, which is what we're directed to do. Let me give you some examples. Let's assume the area covered by the Muhammad Valley Water Authority had someone operating a landfill or dumps, or just some farmer taking on dumps, and they were concerned that this was not appropriate. Would it be lawful for them to get into this? It seems like there's an environmental problem here. Not exactly. Now, there is an authority under the Act itself to have communications with governmental entities in a limited way. They're delineated. And I would think that conceivably, hypothetically, that could fall under that category, which really doesn't apply here because we're talking about an I'm familiar with the concept of how these are agencies of limited authority, they're not home rule, they have to get the permission from statute to engage in various things. It just strikes me as unprecedented and frankly bizarre that before they can render an opinion about something of some concern to their entity, that there has to be specific statutory authority to render opinions. Say, this is not a good idea. Leave aside intervention and appeal because I don't know what else is going to happen. This isn't a good idea. The folks across the street in the General Assembly would have to be aware of how, you things, including rendering opinions, we have to specifically authorize it. I don't think that's a thought or conversation that ever occurred. Well, Your Honor, I think that's why under Dillon's rule, they're not really limited to just things that are expressly given powers. They have those necessary powers that are attendant to the effectuation of their purpose. So the question that we're left with really is what is the purpose of the Water Authority in Illinois? And it's our position that based on a reading of the statute, their purpose is simply to regulate the use of the water. How about to protect it? It doesn't say that anywhere. It has to? There's an entity that does that. Who's that? The IEPA. So? And in the IEPA's enacting legislation, there's substantial background and there's substantial support for the position that the legislature intended that there be a unified system, a to protect the public health and the environment. The Water Authority is a little municipal entity that does not have the sophistication to deal with these issues. Which is why maybe its opinion isn't worth all that much, so why do you then care? Because they're interfering with our process. We don't know what it's worth. Frankly, Your Honor, we don't know if their decision, if their opinion is going to have an enormous impact or not. Are there private water companies like this? Pardon? Are there private water companies or authorities like this one? No. Are they all governmental? No, this is a governmental entity. I mean, the purpose of this entity is to establish ordinances for capping wells and things like that. It's laid out in Section 6. Stepping back for a moment, counsel, because I say this is totally unprecedented in my experience. Why is this good public policy? For exactly the reason that we discussed in the brief, which is the IEPA has the power to regulate this. No, no, that's not the question. Why is it good public policy to muffle, to stifle this governmental entity, the Muhammad Valley Water Authority, from expressing an opinion? Well, there's a two-fold reason. And the first is that they're expending public funds and acting in the public name, clothed in the cloak of public authority, taking actions that they don't have any authority to take. Well, that begs the question, the latter part. So this is really a concern about money and How much money does it take to express an opinion? Well, I... I don't understand. Why is it... I want to hear the public policy argument. You folks over there, the Muhammad Valley Water Authority, shut up! Well, I... Why is this... I've expressed... What are we furthering here? The other half is the Illinois Environmental Protection Act. What about it? It states that because environmental damage does not respect political boundaries, it is necessary to establish a unified statewide program for environmental protection. And we can't have every local district that has a thought and wants to put its oar in messing with the statewide policy... Messing? What? Messing with the statewide policy of unified protection. Wait. Is it... What happened to the idea about the marketplace of ideas and the free flow of information and the way to address one problem where you don't like what someone is saying as you get it and say it as well? I mean, this whole idea of stifling speech strikes me as very problematic. Well, to elaborate on that a little, Your Honor, I don't think there's a thing preventing the individual trustees of the board on the Muhammad Valley Water Authority from expressing their opinions. However, that's not what we're talking about here. We're talking about them going in as the Muhammad Valley Water Authority, cloaked in the garb of their authority, speaking for the public about something they have no authority for. So if the trustees all spoke and said, by the way, we're the trustees of the Muhammad Valley Water Authority, we think this is a bad idea, speaking individually, there would be no problem? Depending how they did it, probably not. Where is the IEPA in this case? The IEPA has already approved the project. So you'll have to excuse me because this is an area I've never really looked at. The IEPA, yes, we've had millions of lawsuits with the IEPA, but the federal government. Did the IEPA participate in this permit process? The record is not very clear on these issues. Yes. The IEPA did have to enter its own permit before we could seek the secondary permit from the U.S. EPA. So their permit went to the federal government? Their permit is in place, and it permits the construction of the new cell to the landfill and so on, and approves the project generally. But the IEPA does not have the authority to approve the specific composition of waste that we're seeking to landfill at this point. Because it's preempted by the federals? Yes. That area of the, that type of waste needs to be regulated by the U.S. EPA rather than the IEPA. So we're not talking about a statewide uniform system because they don't even regulate this area? That's true. I mean, insofar as we're concerned about state agencies, my focus on the IEPA is that if we're concerned about what the legislature intended by creating a water authority, what powers it intended the water authority to have, it has addressed those questions by creating the IEPA with this unified statewide power. So that's my focus on the IEPA's role. But you're saying that Clinton, excuse me, Muhammad doesn't have the authority to protect the water, but you're also saying the IEPA doesn't either. They can't regulate these particular wastes. The IEPA did have the authority and they did what they needed to do to participate in this. But yes, at some point, if what we're asking is whether they can approve a permit, that needs to come from the U.S. EPA. Yes. Now the basis of this is it's a non-home rule unit, so therefore its authority is strictly limited to statutory authority. We have a proposal in the state now, for instance, that about high-speed rail. Everyone's talking about we need high-speed rail and it's going to be maybe down the corridor here, Chicago to Springfield. We have, I think, dozens of communities along that line, most of which are not home rule units. Are they barred? Would they be subject to an injunction to say city of Williamsville or Elkhart, shut up about your opposition to this high-speed rail project? You have no authority to express that view? I don't believe that they would be barred. Why? I need to review the Municipal Code. Well, now wait a second. Based upon the, if we were to grant your request here and say the trial court erred by not enjoining the Mahomet Valley Water Authority from expressing a view, what part of the statutory authority in the Illinois Municipal Code permits these cities to express their opposition to high-speed rail coming through their community? As I recall, and I haven't reviewed the Municipal Code for this specifically, there is a general grant of police power to protect their cities in the Municipal Code. And under the case I'm not getting the title, but they have a general grant of police power to protect. And we don't have that here. So the police power gives them authority to express opinions? It gives them authority to take actions that are protective of the public health. And that taking of actions Well, they have no role in whether high-speed rail is going to be approved or not. This is rather above the level of the cities between here and Chicago. Sure. So how does the police power, what aspect of the police power are they exercising when they say high-speed rail coming down our community would be a bad thing, closing off streets, et cetera? How does that function? I think you just made their case for them under the police power that it would be a bad thing for their community. It would cause them to have to block off streets and so on. Now it's affecting their community, it's invoking their police power, and now they have the authority. One last question on this. As I deem this case, you're asking us literally to say you can't express an opinion. Shut up about it to an agency of government because you don't have the authority. I'd be a lot more comfortable with your position if any court anywhere had ever granted such relief, but I don't see any such reference in your brief. We didn't locate a case, but I also have... So we would be the first not only in Illinois jurisprudence, but in American jurisprudence to so hold? I can't claim to have checked all 50 states for case law on this point. In Illinois, I did not see any equivalent cases, nor did I see any cases where a state agency was so far exceeding its authority that somebody had to file a declaratory judgment action to have them railed in. This is more equivalent to the cases where there's improper zoning, there's improper actions that are taken by various public entities, and individuals have to stand up for their rights and ask that a governmental entity be restrained in some way from doing something that harms an individual. Thank you, Counsel. You did not check to see whether there had ever been interference with the U.S. EPA permit process in other states? Your Honor, there's only one reported case under the TSCA section that we're talking about, and it didn't have to do with this topic. So we have done that research in a different vein. Thank you, Counsel. We have a chance to address this in rebuttal. Ms. Weiler? So you're counsel for the Busybodies, is that it? That's correct, Your Honor. Katherine Weiler on behalf of the Busybody Muhammad Valley Water Authority. I'd like to address three points in response to the questions that the panel has already proffered, and then I'll move into the rest of my argument. First, Justice, you were asking about the process. I want to address that a little bit. I realize the record is a little light on this point. I think that's a result of the procedural posture of this case, because the case hasn't gone to trial yet. So in the event that something I misstated is inaccurate, Counsel, please feel free to correct that. It's not meant to mislead the Court at all. The process, as I understand it, the IEPA issues a permit to switch the purpose of the landfill or what the landfill is allowed to do from residential waste to industrial waste. That was the permit modification that was requested by Clinton Landfill. That has been granted by IEPA. There is a separate process regulated by U.S. EPA exclusively related to the type of waste that's being discussed, the PCB waste and the amounts per million that we're discussing. That is specifically regulated by U.S. EPA under the TSCA statute, which is what Counsel was describing, and the citation is actually 15 U.S.C., I believe it's 2600. It's the Toxic Substance Control Act. My understanding of the act is there are actually fewer than 15 landfills in the country, I believe, that can accept that type of waste product. That is why it is highly regulated by U.S. EPA and not simply left to IEPA to issue a permit for that process. So hopefully that addresses a little bit about the process. As far as leaving it to IEPA to take a position on this matter, we're not talking about the Mahomet Valley Water Authority issuing regulations. That's a different situation. That's a preemption problem. We're talking, as Justice actually issuing an ordinance. Would there be an argument if an ordinance were issued? Perhaps that would just depend on the language of ordinance. It would depend on the statutory interpretation and how the Water Authorities Act interacts with the owner protection agency. Well, in fact, though, am I correct about that? Ms. Neier points out that the Water Authorities also considering intervening and perhaps taking an appeal if there is an adverse ruling from the point of view of the Water Authority, is it correct to say that at this point the only issue really before the trial court and us is whether the Water Authority should have the right to express an opinion to the U.S. EPA? That's exactly correct, Your Honor, even to the extent that that is a ripe issue. And the reason there is concern about that is, as explained to the trial court, there's a question of fact about what exactly the Muhammad Valley Water Authority intends to do. It is not clear that the Muhammad Valley Water Authority intends to oppose this permit application. Since the filing of this appeal, the depositions of the three board members have been taken to a person they've all stated under oath, we just want more information. And if you look at the letter that was sent to U.S. EPA from the engineer that the Muhammad Valley Water Authority hired, it's full of questions. We need more information in order to form an informed opinion about whether we want to object to this permit application. At this point, the Muhammad Valley Water Authority doesn't know. That's why there's a ripeness issue. So perhaps they will want to express an opinion in opposition. That's entirely possible. And if that comes to pass, then there is nothing in the statute that makes that inappropriate or improper. In fact, if you look at Section 24... You're saying they're trying to enjoin something that hasn't even been decided on? Yes, Your Honor. And that's why we're saying this is not a ripe issue. There needs to be a decision first. There hasn't been a decision yet. And when I say there needs to be a decision, I mean the Muhammad Valley Water Authority's board members need to make a decision whether or not they want to object to a permit application has not received preliminary approval from U.S. EPA. U.S. EPA has had the permit on someone's desk for at least two years. There's been no preliminary approval. It is only after preliminary approval is granted that the public comment period opens for U.S. EPA. At that point, that would be when the Muhammad Valley Water Authority would offer an opinion to the extent that it elects to object. It hasn't made a decision yet. But we're not even at that point. Well, how would that manifest itself? And how would...assuming the landfill people are correct that this is something that the water authority has no authority to do and shouldn't do, do they have to monitor the meetings? Are these even public and open? How would they know once the water authority says, yes, we looked at all this. By God, it's bad. We want to express an opinion in At that point, it would be a right issue. Do they have to monitor what you folks are doing? And they can. The meetings are public meetings. By the way, who's on the board? How many members and how do they get there? It's three board members. They can be elected, although I believe these three are appointed. I even have their names, if your honors would like their names. But all three gentlemen, it's two farmers, one retired, one an active farmer, and a small business owner in this community. It's a two-county community, DeWitt County and Piatt County. The water authority is actually centered in Piatt County, but it serves those two communities, or excuse me, those two counties. They're elected, you said? They can be, I believe under the statute, but these, the members of the Mojave Valley Water Authority are appointed. And frankly, I'm not sure who appoints them, if it's the county or...I would have to double check that. I apologize. I'm not sure about the answer to that. But they can be...they are appointed. And that's actually...the process is all included, I believe it's in Section 5. So if the water authority at a meeting said, yeah, we've confirmed our worst fears, this is a bad idea, then it would be right? Then it would be right, your honor. That is correct. At this point, that's not the situation that exists. At this point, the Mojave Valley Water Authority has...the water authority has met, and as you've seen from the record, there are minutes from the water authority's meetings that state, we've decided to look into this process. That's where the testimony becomes important, because the individual board members have all testified now that it was inartfully drafted, the way the minutes were drafted. These aren't attorneys. They weren't contemplating litigation when they drafted it. Their purpose was to look into this process and make a determination about whether they wanted to object. But more important than that is that if they wanted to object, the statute gives them the ability to do that. And that's in Section 24 of the statute. The statute, Section 24 states, so this is 70 ILCS 3715-24, for the protection of public health as applied to the water authority. It states, the water authority can, quote, to make such regulations as it deems necessary to protect public health, welfare, and safety, and to prevent pollution of its water supply. The water authority is concerned about quantity of water in its district. Here, if the water in the district is polluted, there is obviously a concern about quantity. And you can see the authority's responsibilities even in, say, a section like Section 6, I believe it's Section 6B, where the water authority is granted the ability to issue boil orders. These are matters that concern the public and public consumption of the water within the water authority's jurisdiction. We're not talking about regulations. That's exactly right. We're not trying to enjoin you from doing that. Well, and the water authority isn't talking about trying to enjoin Clinton Landfill from seeking a permit. That would be the right, the clearly ascertainable right at issue. Your Honor, your very first question, what is the clearly ascertainable right in this case? Well, the Clinton Valley Landfill has the right to request a permit from US EPA. No one has suggested otherwise. The only thing the water authority is potentially seeking to do, and it's not even clear whether they will, is to offer comment during the public comment phase of the permit application directly to US EPA. That process exists in the daylight. That process exists so the citizens who live within the water authority have the right to offer their opinions, express their concerns, and investigate what is going on that could potentially affect their water supply. It makes no sense, it defies logic, as you suggested, your Honor, that the water authority responsible for the quantity of water in that district wouldn't have the same right that the individual board members would have in expressing an opinion. Again, if they tried to enact some sort of ordinance, that would potentially be a preemption problem that this court would have to determine. That's not what we have here. At this point, more importantly, this is not even... Let me ask you this. How did, if the water authority hasn't yet decided what they want to do, how did the matter get to the point where the landfill even heard about it and felt itself agreed? Because the water authority's minutes are public, as your Honor asked, and apparently someone affiliated with Clinton Landfill learned that the water authority was interested in investigating... So there are busy bodies everywhere. There are busy bodies all over in this case, your Honor. But we haven't even gotten to a point where there's been a determination by the trial court about the merits of this case. That's more important for this court today in its consideration. This is an appeal of a denial of a preliminary injunction. If there were no appeal from the denial of that preliminary it was set for trial on November 1st, and the circuit court elected not to proceed with the merits of the trial because this preliminary injunction was pending before this court. Yes, Ms. Neier, let me ask you. My experience is this is totally unprecedented. Are you aware of any case anywhere granting the sort of relief that the landfills requested? I have not found anything, your Honor. And in fact, I have looked. Now perhaps this is a result of my failure to find something that's in front of my face on Westlaw, but I have not found any case law that suggests... My assessment may have been too modest to talk about nothing in Illinois jurisprudence or American. This could be intergalactic jurisprudence being the first case. It could be, your Honor. I've found nothing that suggests that a governmental entity does not have the right to offer comment related to an application for a permit. If this court has no further questions, I believe that that is everything that the water authority would like to express. We ask that this court affirm the circuit court's denial of the motion for preliminary injunction. Thank you very much. Ms. Neier? If I may, I'd like to first address a point that counsel made. When she read from the statute, she had a little trouble quoting directly from section 24. But section 24 doesn't say the water authority can do something. It says, quote, to make such regulations. It starts in the middle. Well, gosh, that's exactly the same format as the prior sections here. Can I have the number again? Sure. It is 70 ILCS... Of course that was missing. That happens in our office. I actually want to look at the text here. Thank you. Slash 24? Slash 24, yes. 70 ILCS 1375 slash 24? 3715 slash 24. 3715 slash 24.      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. And what I'm looking for is whether this actually, this partial fragment, this fragment of a sentence, whether that's Westlaw's or whether it's actually the legislator's. Your Honor, I have included the enrolled act as well that was passed by the legislature in our appendix at page 77. Section 24 in the appendix actually appears at page 79. What about the argument that they haven't even decided that this is what they want to do, they're just thinking about it? Well, they have sort of decided what they want to do.  They wanted to contest the project. When, frankly, we take them at their word. They said they wanted to contest it. We believe them. And, you know, Your Honor, to address just briefly the question of whether this is open, whether this is something that we could get ahead of, because really that's what we need to do. We didn't know that they were going to file this report, the 16-page engineering report that they filed with the US EPA. They didn't need Board of Trustees approval to do that. So there's no sign of that in the minutes. That was done by the attorneys and by the engineers. So, similarly, we don't necessarily have any heads up from the Board of Trustees on what are essentially litigation decisions or strategic decisions being made internally by the Board of Trustees. Further, as is clear in the minutes themselves, the Board of Trustees went into legislative session, went into closed session to discuss the question of whether to even become involved in contesting the permit application to begin with. So this isn't really a fully open process where we know everything that the Board knows and we can keep up to date and we know what they're thinking and what's in their minds. Frankly, as counsel had stated, this is two small businessmen and two farmers, they probably don't understand what the nuances are of this until they are actually instructed how the process works and given advice to go forward. As a practical matter, we would never have the opportunity to cut off an intervention between the point that the Mahomet Valley Water Authority or its counselors made the decision to seek an intervention and the point of filing of that intervention. The same is true of an appeal. The purpose of the Declaratory Judgment Act is to make it so that we don't have to guess what they're thinking and what they're going to do next. When they have taken a strong position and stated what their intentions are, they are going to contest Clinton Landfill's permit application. Did they do that in front of the IEPA? No, they did not. Is that an open process? I believe it was, Your Honor. I was not personally involved in that part of the process, but it would have been an open process. And they didn't contest, as far as I know, they didn't contest in front of the DeWitt County Board when the DeWitt County Board approved. Would you have tried to get an injunction against them if they had tried to protest in front of the IEPA? You know, Your Honor, I can't speculate what we would have done, but I think you could have obtained one? Yes. Yes, Your Honor, on the same grounds I believe we can now. The question is whether it's appropriate to have a governmental body clothed in the garb of its authority as a governmental body speaking for the public, interfering with and participating in processes which it is not empowered to participate in. Counsel made the point that the individual trustees could take these actions, and I concede that. If it's equivalent, if it's just exactly the same, then why isn't that what happened? That isn't what happened because they do want the garb, the cloak of authority speaking for the public. And under Section 24, they do not have the authority to do that, and no other part of the act provides that authority. Thank you, Counsel. I would take this matter under advice from Dean Reese's.